# Illinois Official Reports

## Supreme Court

---

**Dynak v. Board of Education of Wood Dale School District 7, 2020 IL 125062**

---

| | |
|---|---|
| Caption in Supreme Court: | MARGARET DYNAK, Appellant, v. THE BOARD OF EDUCATION OF WOOD DALE SCHOOL DISTRICT 7, Appellee. |
| Docket No. | 125062 |
| Filed | April 16, 2020 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Du Page County, the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Judgments affirmed. |
| Counsel on Appeal | Ryan M. Thoma, of Illinois Education Association, NEA, and Michael H. Slutsky, of Allison, Slutsky & Kennedy, P.C., both of Chicago, for appellant. |
| | John E. Fester and Adam Dauksas, of Scariano, Himes and Petrarca, Chtrd., of Chicago, for appellee. |
| | Gilbert A. Cornfield, of Cornfield and Feldman LLP, of Chicago, for *amicus curiae* Illinois Federation of Teachers. |

Stanley B. Eisenhammer, Katherine A. LaRosa, and Jennifer R. Donnelley, of Hodges, Loizzi, Eisenhammer, Rodick & Kohn, LLP, of Arlington Heights, for *amici curiae* Illinois Association of School Boards *et al.*

Justices

CHIEF JUSTICE ANNE M. BURKE delivered the judgment of the court.

Justices Garman and Theis concurred in the judgment and opinion.

Justice Karmeier specially concurred, with opinion, joined by Justice Kilbride.

Justices Neville and Michael J. Burke took no part in the decision.

## OPINION

¶ 1    At issue is whether section 24-6 of the Illinois School Code (105 ILCS 5/24-6 (West 2016)) allows a teacher who gives birth at the end of the school year to use her accumulated paid sick leave at the start of the next school year. The school district in this case denied plaintiff's request to use paid sick leave at the beginning of the school year following the birth of her child. Plaintiff subsequently filed a complaint for declaratory judgment in the circuit court of Du Page County. The circuit court held in favor of the school district, and the appellate court affirmed. 2019 IL App (2d) 180551. We now affirm the lower courts' judgments.

¶ 2                                   BACKGROUND

¶ 3    Section 24-6 of the School Code provides, in relevant part:

"§ 24-6. Sick leave. The school boards of all school districts, including special charter districts, but not including school districts in municipalities of 500,000 or more, shall grant their full-time teachers *** sick leave provisions not less in amount than 10 days at full pay in each school year. If any such teacher or employee does not use the full amount of annual leave thus allowed, the unused amount shall be allowed to accumulate to a minimum available leave of 180 days at full pay, including the leave of the current year. Sick leave shall be interpreted to mean personal illness, quarantine at home, serious illness or death in the immediate family or household, or birth, adoption, or placement for adoption. The school board may require a certificate from a physician *** as a basis for pay during leave after an absence of 3 days for personal illness or 30 days for birth or as the school board may deem necessary in other cases. *** For paid leave for adoption or placement for adoption, the school board may require that the teacher or other employee provide evidence that the formal adoption process is underway, and such leave is limited to 30 days unless a longer leave has been negotiated with the exclusive bargaining representative." 105 ILCS 5/24-6 (West 2016).

- 2 -

¶ 4    Plaintiff, Margaret Dynak, is a full-time teacher employed by Wood Dale School District 7 (District) since 2008. On March 15, 2016, plaintiff notified the District in writing that she was due to give birth to her second child through a scheduled caesarian section on June 6, 2016. She requested to use 1.5 days of her accumulated paid sick leave on June 6 and 7. June 7 was the last day of the 2015-16 school year and was scheduled as a half-day of work.

¶ 5    Plaintiff also requested to use 12 weeks of leave pursuant to the Family and Medical Leave Act of 1993 (FMLA) (29 U.S.C. § 2601 *et seq.* (2012)), beginning on August 18, 2016, the first day of the 2016-17 school year. Under the FMLA, an eligible employee may take 12 workweeks of unpaid leave during any 12-month period for the birth of a child. See 29 U.S.C. § 2612(a)(1)(A) (2012); 29 C.F.R. § 825.200(a)(1) (2013). Finally, plaintiff requested to use paid sick leave for the first 28.5 days of her FMLA leave, pursuant to section 24-6 of the School Code. Thus, plaintiff requested that the first 28.5 workdays of her 12-week leave would be paid, while the remaining days would be unpaid. It is undisputed that plaintiff had accumulated at least 30 days of paid sick leave as of the date of her request.

¶ 6    The District allowed plaintiff to use 1.5 days of her accumulated paid sick leave on June 6 and 7, 2016, but it denied her request to use paid sick leave beginning on August 18, 2016. In a letter dated April 21, 2016, John Corbett, the District's superintendent, informed plaintiff that her 12 weeks of unpaid FMLA leave had been approved by the school board. The letter stated, however, that since the FMLA leave would begin 10 weeks after the birth, plaintiff was not "eligible to use sick days for the leave unless additional circumstances exist that would normally allow for the use of paid sick leave."

¶ 7    On May 5, 2016, Sylvia Rios, associate general counsel for the Illinois Education Association, sent a letter to the District on plaintiff's behalf. Rios contended in her letter that section 24-6 of the School Code mandates a minimum 30-day period of paid sick leave following the birth of a child and "does not provide for a specific 30[-]day period during which a teacher must take the days off." After further correspondence between the parties, the District did not change its position on the matter. Plaintiff gave birth on June 6, 2016. She began her 12-week FMLA leave on August 18, 2016. Plaintiff did not submit a physician's certificate to substantiate a medical need for additional paid sick leave. On October 6, 2016, plaintiff's attorney sent the District a written demand for reimbursement of lost wages for 28.5 days of sick leave. The record does not contain the District's response, if any, to this demand.

¶ 8    On October 13, 2016, plaintiff filed a three-count complaint in the circuit court. Count I prayed for a declaratory judgment to determine the rights and liabilities of the parties under section 24-6 and to restore to plaintiff her lost wages and benefits for the period during which she was denied the use of paid sick leave. Count II alleged plaintiff was entitled to reasonable attorney fees pursuant to the Attorneys Fees in Wage Actions Act (Wage Act) (705 ILCS 225/1 (West 2016)). Count III alleged plaintiff was entitled to attorney fees, costs, and damages pursuant to the Illinois Wage Payment and Collection Act (820 ILCS 115/14 (West 2016)).

¶ 9    The parties filed cross-motions for summary judgment. Following arguments, the trial court granted the District's motion and denied plaintiff's motion. In ruling for the District, the trial judge stated:

"In order to adopt the interpretation of the statute urged by the plaintiff, the Court would have to find that the conditions set forth in the definition of sick leave create a

vested right in the plaintiff and other similarly situated persons regardless of when those conditions occurred.

"The accident of giving birth in the summertime, I don't believe creates any kind of a right in the plaintiff to sick leave at a future period in time that is not covered by the Act.

"For instance, if there were a death in the plaintiff's immediate family that took place on June 15th, after the school year ended, she could not reasonably expect to have three days of sick leave for that occurrence, but the sick leave taking place after the school year started.

"And the same could be said for any of the other occurrences that are set forth in the definition of sick leave."

¶ 10 Plaintiff filed a notice of appeal seeking review of the dismissal of counts I and II of her complaint.[1] A divided appellate court panel affirmed the trial court's judgment. 2019 IL App (2d) 180551. The majority held, *inter alia*, that sick leave for birth must be interpreted in the same manner as sick leave for other events listed in section 24-6, such as personal illness. *Id.* ¶ 36. The majority further held that plaintiff's interpretation of the statute, which would allow her to use paid sick leave beginning approximately 10 weeks after the birth, would lead to an absurd result when applied to the other triggering events in the statute. *Id.*

¶ 11 The majority also noted that plaintiff's interpretation would "confer upon teachers and teachers alone a sort of *sub rosa* paid parental leave based on the fortuity of the timing of birth," for which there was no textual support. *Id.* ¶ 56. The majority surmised, "[i]f the legislature had intended to confer paid parental leave, it would not have hijacked a sick-leave provision to do so." *Id.* Accordingly, the majority rejected plaintiff's statutory interpretation and affirmed the trial court's judgment in favor of the District. Since plaintiff did not prevail on the section 24-6 issue, the majority also rejected plaintiff's Wage Act claim for attorney fees. *Id.* ¶ 58.

¶ 12 In his dissent, Justice Hudson characterized the majority's interpretation of section 24-6 as an impermissible rewriting of the statute. *Id.* ¶¶ 63, 65 (Hudson, J. dissenting). He argued that the statute allows a teacher to use accumulated paid sick days "for birth" for the next 30 workdays following the birth, with no limitations or exceptions. *Id.* ¶ 64. Since the statute contains no exception for when a teacher's next 30 workdays following the birth are interrupted by the summer break, he argued the District had no right to refuse plaintiff's request. *Id.*

¶ 13 This court allowed plaintiff's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. July 1, 2018). In addition, we allowed the Illinois Federation of Teachers to file an *amicus curiae* brief in support of plaintiff's position and the Illinois Association of School Boards and Illinois Association of School Administrators to file jointly an *amicus curiae* brief in support of the District's position. Ill. S. Ct. R. 345(a) (eff. Sept. 20, 2010).

¶ 14                                                    ANALYSIS

¶ 15 The trial court decided this case on cross-motions for summary judgment. Summary judgment is proper when the pleadings, depositions, admissions, and affidavits show that there

---

[1]Plaintiff did not ask the appellate court to review the dismissal of count III of her complaint. Thus, count III is not at issue in this appeal.

is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016). When parties file cross-motions for summary judgment, they agree that the case involves only legal questions and ask the court to decide the issues on the existing record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. Upon review of the grant or denial of summary judgment, we apply a *de novo* standard of review. *Id.* ¶ 30. *De novo* review is also appropriate in this case because the main issue involves statutory construction, a question of law. *Id.*

¶ 16        The principles of statutory construction are well established. Our primary goal is to interpret and give effect to the legislature's intent. *Corbett v. County of Lake*, 2017 IL 121536, ¶ 30. The best indicator of the legislative intent is the language in the statute, which must be given its plain and ordinary meaning. *Id.* Statutory terms cannot be considered in isolation but must be read in context to determine their meaning. *Id.* ¶¶ 27, 30. Furthermore, in interpreting statutory language, we may consider the consequences that would result from construing the statute one way or the other. *Id.* ¶ 35. In doing so, we presume that the legislature did not intend absurdity, inconvenience, or injustice. *Id.* If the language is unambiguous, the statute should be applied as written. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11. If the statutory language is ambiguous, however, this court may look to various tools of statutory interpretation, such as legislative history. *Id.* A statute is ambiguous if it is subject to more than one reasonable interpretation. *Id.*

¶ 17                              I. Statutory Paid Sick Leave

¶ 18        Section 24-6 defines sick leave for full-time teachers and certain school district employees in municipalities with populations of less than 500,000 people. 105 ILCS 5/24-6 (West 2016). The statute provides that eligible employees shall be granted at least 10 paid sick days per school year, with the unused amount allowed to accumulate. *Id.* Prior to 2007, the statutory definition of "sick leave" did not include birth or adoption. Sick leave was defined solely as "personal illness, quarantine at home, or serious illness or death in the immediate family or household." 105 ILCS 5/24-6 (West 2006). At that time, the statute required a certificate from a physician (or other medical professional as defined in the statute) "as a basis for pay during leave after an absence of 3 days for personal illness, or as [the school board] may deem necessary in other cases." *Id.*

¶ 19        On August 14, 2007, the legislature amended the statute to add "birth, adoption, or placement for adoption" to the definition of sick leave. Pub. Act 95-151, § 5 (eff. Aug. 14, 2007) (amending 105 ILCS 5/24-6). Accordingly, since 2007 the statute defines sick leave as "personal illness, quarantine at home, serious illness or death in the immediate family or household, or birth, adoption, or placement for adoption." 105 ILCS 5/24-6 (West 2016). Approximately two years later, the legislature amended the statute to require a physician's certificate after 30 days (or approximately six workweeks) of sick leave for birth: "[t]he school board may require a certificate *** as a basis for pay during leave after an absence of 3 days for personal illness *or 30 days for birth*, or as the school board may deem necessary in other

cases." (Emphasis added.) Pub. Act 96-51, § 5 (eff. July 23, 2009) (amending 105 ILCS 5/24-6).[2]

¶ 20    At issue in this appeal is how an intervening summer break affects a teacher's right under section 24-6 to use accumulated paid sick leave after the birth of a child. Plaintiff contends there is no explicit temporal limitation in the statute for paid sick leave in connection with a birth. She argues that the statute does not specify that paid sick leave for birth must be continuous, when it must begin, or whether it must be completed within a certain amount of time after the birth. Plaintiff contrasts section 24-6 of the School Code with the Child Bereavement Leave Act (820 ILCS 154/10 (West 2016)), which grants a maximum of two weeks (10 workdays) of unpaid bereavement leave for the death of a child and requires the leave to be completed within 60 days after the employee receives notice of the child's death. Plaintiff argues that the legislature could have placed a similar time restriction on paid sick days in section 24-6 of the School Code but that it chose not to do so. Based on the absence of an explicit time limitation in the statute, plaintiff reasons that an intervening period of nonworkdays, such as during the summer break, does not affect a teacher's right to use paid sick leave following a birth. Thus, plaintiff interprets the statute as allowing sick leave for birth to be open-ended and noncontinuous. We disagree with this interpretation of the statute.

¶ 21    Contrary to plaintiff's reading, the statute does expressly limit a teacher's right to use paid sick leave for birth. Section 24-6 of the School Code is titled "Sick Leave." 105 ILCS 5/24-6 (West 2016). By its plain terms, it provides "sick leave" to certain teachers and school employees for various events requiring employees to be absent from work. *Id.* The statute includes "birth" in its list of events triggering a teacher's right to use her accumulated paid sick leave. The statute further states that a medical certificate is required "as a basis for pay during leave after an absence of *** 30 days for birth." *Id.* This language strongly suggests that the legislature intended that sick leave for birth must have a temporal connection to the birth. Indeed, the 30-day requirement only makes sense if the intent was for paid sick leave to follow immediately after the birth. If, as plaintiff contends, an employee can take 30 days of paid sick leave "for birth" months or even years after the birth, it would be illogical to require a medical certificate in order to extend that 30-day period.

¶ 22    Our reading of the statute is reinforced when we consider that birth is listed in a group with other events that qualify for paid sick leave. In 2007, the legislature added "birth, adoption, or placement for adoption" to the existing list of triggering events, which previously included only "personal illness, quarantine at home, or serious illness or death in the immediate family or household." 105 ILCS 5/24-6 (West 2016); see also Pub. Act 95-151, § 5 (eff. Aug. 14, 2007). It is a general rule that words grouped in a list should be given related meaning, pursuant to the doctrine of *noscitur a sociis*. *Corbett v. County of Lake*, 2017 IL 121536, ¶ 31 (citing *Third National Bank in Nashville v. Impac Ltd.*, 432 U.S. 312, 322 (1977)). There is no

---

[2]In the same 2009 amendment, the legislature added a new requirement for using sick leave for adoption or placement for adoption: "[f]or paid leave for adoption or placement for adoption, the school board may require that the teacher or other employee provide evidence that the formal adoption process is underway, and such leave is limited to 30 days unless a longer leave has been negotiated with the exclusive bargaining representative." Pub. Act 96-51, § 5 (eff. July 23, 2009) (amending 105 ILCS 5/24-6).

indication in the statutory language that the legislature intended sick leave for "birth" to operate differently from sick leave for "personal illness, quarantine at home, or serious illness or death in the immediate family or household." Therefore, whatever construction we give to sick leave for the other events listed in the statute must also be given to sick leave for "birth."

¶ 23    The only reasonable way to interpret the statute's allowance of sick leave for personal illness, quarantine at home, or serious illness or death in the immediate family or household is that the sick leave must be contemporaneous with the event. The provision requiring a teacher to provide a medical certificate after an absence of three days for personal illness is clear evidence that the legislature did not intend for sick leave to be separated in time from the actual illness. Moreover, there is no evidence in the text that the legislature intended to create a vested right in an employee to take paid sick leave on any days the employee chooses.

¶ 24    In determining legislative intent, we may consider the consequences that would result from construing the statute one way or another, and in doing so, we presume that the legislature did not intend absurdity, inconvenience, or injustice. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 280 (2003). Applying plaintiff's proposed reading of sick leave for "birth" to sick leave for the other qualifying events leads to absurd results. For example, suppose that a teacher experienced a personal illness or family death during the summer break and that these events are resolved prior to the start of the school year. In these scenarios, it would be absurd to suggest that the teacher may use paid sick leave at the beginning of the school year to make up for the days lost to illness or family death during the summer break. Furthermore, under plaintiff's proposed construction, a sick teacher could choose to come to work while sick, then take paid sick leave on future days when he or she is well. This result, too, is absurd.

¶ 25    We believe the legislature could not have intended the statute to be interpreted in the manner urged by plaintiff. Plaintiff's proposed construction of the statute disconnects the qualifying event from the sick leave, contrary to the plain statutory language. In the same way that sick leave for illness may not be disconnected in time from the illness, sick leave for birth may not be disconnected in time from the birth.

¶ 26    Nevertheless, plaintiff argues that sick leave for birth and adoption should be treated differently from the other qualifying events. In support, she notes that a comma and the word "or" separate the two clauses in the phrase "personal illness, quarantine at home, serious illness or death in the immediate family or household, *or* birth, adoption, or placement for adoption." (Emphasis added.) 105 ILCS 5/24-6 (West 2016). Plaintiff argues that this demonstrates the legislature's intent that sick leave for birth or adoption can be taken at the teacher's discretion rather than contemporaneously with, or immediately following, the birth or adoption. This argument is unavailing. If the legislature had intended that a teacher be allowed to choose when to take paid sick leave after birth or adoption, it surely would have made that intention explicit. Simply inserting an "or" between the clauses does not imply that the legislature intended to treat sick leave for birth differently than sick leave on other grounds.

¶ 27    Plaintiff also argues that sick leave for birth, adoption, or placement for adoption should be treated differently from the other qualifying events listed in the statute because they have different purposes. She notes that the right to use up to 30 days of sick leave for birth is not explicitly dependent on a teacher being ill or incapacitated, nor is such leave limited to female employees. Plaintiff argues, therefore, that there is no reason why a teacher should be barred from using sick days for "birth" several months after the actual birth. We find plaintiff's

interpretation to be unworkable and impossible to implement. Plaintiff contends that the school board can determine whether a leave is "for birth" on a case-by-case basis but does not suggest how the phrase "for birth" should be defined. Without a clear definition, school districts are left with no guidance for how to implement the statute. Thus, adopting plaintiff's construction of the statute would violate the principle that "statutes should be construed in such a way as to avoid 'impractical or absurd results.' " *Nowak*, 2011 IL 111838, ¶ 21 (quoting *People ex rel. Lyerly v. Missouri Pacific R.R. Co.*, 328 Ill. 504, 509 (1927)).

¶ 28    We find the most reasonable and consistent reading of the statute is that it allows an employee who experiences a qualifying event to use accumulated paid sick leave at the time of that event, not later at the employee's discretion. We thus hold that under section 24-6, teachers may use up to 30 days of accumulated paid sick leave during the six-week period *immediately* following the birth. Once that six-week period has elapsed, a teacher may not use her paid sick days for birth unless he or she provides a physician's certificate as set forth in the statute.

¶ 29    Plaintiff argues that the interpretation we are adopting is unjust because it deprives her of her earned sick leave simply based on the time of year when she gave birth. She argues that the statute should not be read in a way that "reduces" an employee's earned sick days. Plaintiff cites the dissent in the appellate court, which argued:

> "[A] teacher who happens to give birth in the middle of a school year may use 30 accumulated sick days, a teacher who happens to give birth during the last month of a school year may use fewer, and plaintiff, who happened to give birth on very nearly the last day of a school year, may use almost none. All despite the fact that these teachers are otherwise identically situated. This, in my view, would constitute an absurd result." 2019 IL App (2d) 180551, ¶ 70 (Hudson, J., dissenting).

¶ 30    We are not persuaded by this argument. Plaintiff does not contend the statute violates equal protection or constitutes special legislation. Rather, she simply claims that the legislature could not have intended for the statute to operate in a way that results in unfair or unequal treatment. But plaintiff's underlying premise is faulty. If a teacher gives birth during the school year, she must use her accumulated sick leave to take paid time off for the birth. If a teacher gives birth just prior to or during a summer break, however, the teacher has no need to use her accumulated sick days because she is not required to be at work during that time. Her bank of sick days has not been reduced. She can save her sick days for another future qualifying event or receive credit for them at the time of retirement. See 40 ILCS 5/16-127(b)(6) (West 2016). Under these circumstances, the teacher has not been harmed or unfairly deprived of any earned benefits.

¶ 31    In the instant case, plaintiff gave birth on the second-to-last day of the 2015-16 school year. She used 1.5 days of her accumulated paid sick leave for the last two days of the school year. More than six weeks passed between the date plaintiff gave birth and the date she was required to return to work. Therefore, section 24-6 of the School Code did not entitle her to use any paid sick leave for "birth" at the beginning of the 2016-17 school year. We thus affirm the trial court's entry of summary judgment for the District as well as the appellate court's affirmance of that judgment.

## II. Attorney Fees

Plaintiff also appeals the judgment with respect to her Wage Act claim. Pursuant to the Wage Act, an employee who brings an action for "wages earned and due and owing" is entitled to reasonable attorney fees which a court or jury determines to be justly due and owing. 705 ILCS 225/1 (West 2016). Because we affirm the lower courts' judgments that plaintiff was not entitled to statutory paid sick leave, we hold plaintiff is not entitled to attorney fees under the Wage Act. The statute is inapplicable here, as no wages are due and owing to plaintiff.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the lower courts.

Judgments affirmed.

JUSTICE KARMEIER, specially concurring:

The issue in this case concerns the construction of section 25-6 of the School Code (105 ILCS 5/24-6 (West 2016)), which is set forth in full in the lead opinion. The lead opinion has also adequately set forth our long-established principles of statutory construction. To a large extent, I agree with the lead opinion. I cannot agree, however, with the lead opinion's departure from the plain and ordinary meaning of the statutory language to impermissibly insert the additional limitation that sick leave for birth must be taken immediately following the birth of a child.

Despite coining the listed events in section 24-6 as "triggering events," the statutory language offers no support for finding that all the listed events kick-start the date upon which teachers must immediately use their sick leave. To the contrary, the statutory language reveals that at least one event would not be treated in this way. With respect to sick leave for adoption, section 24-6 allows schools to require evidence that "the formal adoption process is underway." *Id.* § 24-6. This indicates the legislature's intent to allow teachers to use their sick leave before, and not necessarily contemporaneously with or immediately following, the date of the adoption. If the legislature intended to limit the use of sick leave for adoption to only immediately following the adoption, it would have required evidence that the adoption was completed.

This portion of section 24-6 also rebuts the lead opinion's application of *noscitur a sociis* to conclude sick leave must be taken immediately after one of the listed events occurs. *Noscitur a sociis* is a principle that guides our interpretation of statutes, but it is subordinate to the legislative intent evinced by the unambiguous language of section 24-6. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 509 (2007); see *People v. Diggins*, 235 Ill. 2d 48, 56 (2009). According to the lead opinion, because the only reasonable interpretation of sick leave for illness is that it must be taken contemporaneously with personal illness, the use of sick leave for birth must begin contemporaneously with and following the event of birth. Yet, section 24-6 affords sick leave for adoption before the event transpires. See *supra* ¶ 3. Because the lead opinion's interpretation is at odds with the statutory language, its application of *noscitur a sociis* is inappropriate.

The lead opinion's analysis not only disregards the plain language of section 24-6, it overlooks the absurd results of its own interpretation. The most glaring absurdity is that a

teacher could not use sick leave for birth for the entire date on which the birth occurs. Its rule prevents teachers from using sick leave anytime prior to the birth, including the time period from when a parent presents to the hospital until the birth is completed, because sick leave for birth must be taken in the six-week period "immediately following the birth." (Emphasis omitted.) *Supra* ¶ 28. Clearly, the legislature could not have intended this. A commonsense reading of section 24-6 necessarily allows a teacher to take sick leave for the entire date of birth.

¶ 42  Applying the rule consistently to the other listed events, as the lead opinion asserts that we must, also leads to absurd results. For example, a teacher could not take sick leave for death to attend a family member's funeral that takes place a few days or longer after the actual death, unless that teacher decides to take off work and use his or her sick leave immediately following the time of death until the day of the funeral. Further, in the face of the statutory language indicating otherwise, the lead opinion's rule would preclude a teacher from taking sick leave for adoption or placement for adoption to attend the meetings crucial to complete the adoption.

¶ 43  Contrary to the lead opinion's analysis, the language of section 24-6 provides the sole limitation, regarding the commencement of sick leave use, that the use of the sick leave is for "personal illness, quarantine at home, serious illness or death in the immediate family or household, or birth, adoption, or placement for adoption." 105 ILCS 5/24-6 (West 2016). There are no other explicit conditions dictating when a teacher may begin using sick leave.

¶ 44  Accordingly, I would find the listed events are "qualifying events," to which the use of sick leave must have a reasonable connection. We cannot, as the lead opinion does, depart from the plain language of the statute by inserting limitations that the legislature did not express or make the law consistent with our own idea of public policy. *In re Marriage of Turk*, 2014 IL 116730, ¶ 32. The reasonableness of the connection must therefore be a fact-specific inquiry that considers the qualifying event at issue and each case's unique circumstances.

¶ 45  Turning to the sick leave at issue here, the legislature only used the term "for birth." The provision offers no support to conclude that "birth" means general "parental leave" or anything other than the actual birthing of a child. There is no further evidence of the specific purpose behind providing teachers sick leave for birth.

¶ 46  Nevertheless, the legislature's failure to explicitly state when sick leave for birth must first be taken or to limit such leave to a specific purpose does not leave section 24-6 open to the teacher's discretion to use sick leave for birth whenever he or she chooses. In determining legislative intent, we may consider the consequences of construing the statute one way or another, and we presume the legislature did not intend absurdity. *Lakewood Nursing & Rehabilitation, LLC v. Department of Public Health*, 2019 IL 124019, ¶ 17. As such, to avoid the absurdities explained in the lead opinion (*supra* ¶ 24), I agree that the use of sick leave for birth must have a reasonable temporal connection to the listed event.

¶ 47  As evinced by the application of the lead opinion's rigid rule to the qualifying events, the varied nature of the qualifying events necessitates such a flexible rule. Illness and quarantine are continuous in nature, but generally, neither is easily anticipated. Thus, it is reasonable to require teachers to take their sick leave for illness contemporaneously with the presence of illness because the nature of the event allows it to be present over the entire sick leave period. On the other hand, birth, adoption, and death occur—relatively—in a single instance, making it impossible for these events to be present during the entire sick leave period. These events

also are usually anticipated and require different levels of preparation at different times. In relation to birth, every parent experiences a waiting period and labor before the birth occurs. Further, doctors often order mothers to bed rest in order to ensure a healthy birth. Therefore, while taking sick leave for illness before illness occurs seems unreasonable, it may be reasonable to take sick leave for birth before the birth occurs, just as the statute allows a teacher to use sick leave to prepare for the completion of adoption. 105 ILCS 5/24-6 (West 2016); see *supra* ¶ 3.

¶ 48 Although I find sick leave for birth requires a reasonable temporal connection to birth and should not be constrained to "immediately following birth," I agree that section 24-6 limits a teacher's use of sick leave for birth to the six-week period that follows the teacher's initial use of such sick leave. Because plaintiff's requested sick leave regarding the 2016-17 school year would be taken more than six weeks following plaintiff's initial use of her sick leave for birth, I agree with the lead opinion that plaintiff was not entitled to use any paid sick leave for birth at the beginning of the 2016-17 school year.

¶ 49 For the reasons stated above, I specially concur.

¶ 50 JUSTICE KILBRIDE joins in this special concurrence.

¶ 51 JUSTICES NEVILLE and MICHAEL J. BURKE took no part in the consideration or decision of this case.